UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

EVERARDO URIAS,

                Petitioner,

              v.

FERETI SEMAIA, et al.,

                Respondents.

Case No. 5:26-cv-02753-DTB

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

**I.**

**PROCEDURAL HISTORY**

On May 21, 2026, petitioner Everardo Urias ("Petitioner"), through counsel, filed a Verified Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") (Docket No. 1), accompanied by eight exhibits (Docket No. 1-1). The Petition alleges the following grounds for habeas relief: (1) Petitioner's detention

/ / /

/ / /

/ / /

1

violates his right to procedural due process under the Fifth Amendment; (2) Petitioner's detention violates his right to substantive due process under the Fifth Amendment; and (3) Petitioner's detention violates 8 U.S.C. § 1226(a). (Docket No. 1 at 15-18).[1]

On May 28, 2026 (pursuant to General Order 26-05's expedited briefing schedule, see Docket No. 5), Respondents filed a Response to the Petition ("Answer"). (Docket No. 8). In the Answer, Respondents contend that Petitioner is being lawfully detained as part of his ongoing removal proceedings; that he has received a Rodriguez bond hearing in which the Department of Homeland Security ("DHS") demonstrated by clear and convincing evidence that he was both a flight risk and a danger to the community; and that that bond hearing was sufficient to satisfy due process. (Docket No. 8 at 2-4).

On June 1, 2026, Petitioner file a Reply. (Docket No. 9). In the Reply, Petitioner notes that Respondents do not dispute that Petitioner was arrested without a pre-arrest warrant, that he was given no notice of his impending arrest, that he voluntarily walked into a government office in response to a deceptive "Call In Letter," that he received no pre-deprivation hearing, and that he had lived freely in the United States for nearly ten years after his proceedings were administratively closed with DHS's own consent. (Id. at 2, 4). Petitioner contends that no post-deprivation process, including the post-deprivation Rodriguez bond hearing, can "retroactively cure the unconstitutional deprivation of a protected liberty interest that occurred without notice or hearing," and that immediate release is the only adequate remedy. (Id. at 2-5).

---

[1]     For the parties' pleadings, the Court cites to the CM/ECF pagination at the top of each page.

Thus, this matter is now ready for decision. For the reasons set forth below, the Court grants the Petition.

## II.

## BACKGROUND

Petitioner is a 48-year-old native and citizen of Mexico. (Petition at ¶¶ 8, 25). On December 11, 1996, Petitioner married Angelica Maria Rendon Cortez, in Guasave, Sinaloa, Mexico. (Id. at ¶ 8; Petition, Exhibit ["Exh"] H, Declaration of Margaret Hellerstein ["Hellerstein Decl."] at ¶ 5). Petitioner has four children, two of whom are U.S. citizens and minors. (Petition at ¶ 8; Hellerstein Decl. at ¶¶ 4-5).

On or about November 10, 2002, Petitioner entered the United States without inspection at or near San Luis, Arizona. (Petition at ¶ 9; Hellerstein Decl. at ¶¶ 5-6). Petitioner has resided continuously in the United States since then, a period of more than 23 years. (Petition at ¶ 9; Hellerstein Decl. at ¶ 6). For the past 12 years, he has had a fixed address. (Id.). Prior to his detention (since March 2003), he worked for more than 22 years as a laborer for O.M. Contracting Inc. (Petition at ¶ 9; Hellerstein Decl. at ¶¶ 6, 15).

On July 25, 2014, before the government-initiated removal proceedings against him, Petitioner filed an affirmative asylum application on Form I-589. (Petition at ¶ 10 Petition, Exh. B, Case Status Info Sheet; Hellerstein Decl. at ¶ 7). On October 23, 2014, DHS served Petitioner a Notice to Appear ("NTA"), which was issued because his asylum application was referred to an Immigration Judge. (Petition at ¶ 11; Petition, Exh. A, NTA; Hellerstein Decl. at ¶ 7).

On November 18, 2015, with DHS's consent, the Immigration Court administratively closed Petitioner's removal proceedings as an act of prosecutorial discretion. (Petition at ¶ 12; Petition, Exh. B, Immigration Judge Order dated November 18, 2015; Hellerstein Decl. at ¶¶ 8-9).

3

From 2015 to 2025, Petitioner lived in the community, worked, paid taxes, and supported his family.  (Petition at ¶ 12; Hellerstein Decl. at ¶ 12).  He had no Immigration and Customs Enforcement ("ICE") check-in requirements, no bond, and no conditions of release.  (Id.).  DHS did not allege any changed circumstances during that decade.   (Id.).

In December 2017, Petitioner was arrested for driving under the influence.  (Petition at ¶ 13; Hellerstein Decl. at ¶ 13).  In January 2019, he was convicted of violating California Vehicle Code Section 23152(B).  (Petition at ¶ 13; Petition, Exh. G, Criminal Record; Hellerstein Decl. at ¶ 13).  Although DHS was aware of this conviction, DHS took no action to recalendar Petitioner's case or to impose any supervision.  (Petition at ¶ 13; Hellerstein Decl. at ¶ 13).  For more than six years after the conviction, Petitioner remained free without any ICE reporting requirements. (Id.).

After the administrative closure of his case, Petitioner maintained steady employment, earned substantial lawful income, paid taxes, and served as the sole financial provider for his family.  (Petition at ¶ 14; Hellerstein Decl. at ¶¶ 12, 15).

On June 11, 2025, nearly ten years after the administrative closure and more than six years after the DUI conviction, DHS sent Petitioner a "Call In Letter" requiring him to report in person to the San Bernardino ICE Office on August 7, 2025 for a "case follow up."  (Petition, ¶ 15; Petition, Exh. F, Call In Letter; Hellerstein Decl. at ¶ 14).  The letter did not mention the  DUI conviction, did not allege any changed circumstances, and did not state that Petitioner would be arrested. (Petition at ¶ 15).

On August 7, 2025, Petitioner went to the ICE office voluntarily.  (Petition at ¶ 16; Hellerstein Decl. at ¶ 14).  Once inside the office, ICE agents arrested him. (Id.).  They did not have a pre-arrest warrant, they did not provide a pre-deprivation

4

hearing, they did not present any finding of changed circumstances by a neutral judge, and they did not give him prior notice that he would be arrested. (Petition at ¶¶ 16, 18; Petition, Exh. C, I-213). The I-213 form does not mention any warrant, any exigent circumstances, or any new criminal conduct and only recites information that includes the DUI but does not explain why ICE waited more than six years after the conviction to act or why it acted after sending the Call In Letter. (Petition at ¶ 17; Petition, Exh. C, I-213). At the time of Petitioner's arrest, Petitioner was not fleeing, was not committing a crime, and was not a danger. (Petition at ¶ 18).

On September 8, 2025, a month after taking Petitioner into custody, DHS filed a motion to recalendar his administratively closed case. (Petition at ¶ 19; Petition, Exh. D, DHS Motion to Recalendar). According to Petitioner, the sole basis stated for the motion to recalendar was that Petitioner was in DHS custody. (Petition at ¶ 19).

On September 9, 2025, the Immigration Court granted the motion to recalendar. (Petition at ¶ 20; Petition, Exh. E, Immigration Judge Order Granting Motion to Recalendar).

Petitioner's wife and four children reside in the United States and Petitioner is the sole financial supporter of his family. (Petition at ¶ 21; Hellerstein Decl. at ¶¶ 12, 15). Petitioner's detention has caused hardship to his children, including his two United States citizen children. (Petition at ¶ 21; Hellerstein Decl. at ¶¶ 4, 15). Petitioner's only criminal conviction is the 2019 DUI. (Petition at ¶ 22; Petition, Exh. G, Criminal Record; Hellerstein Decl. at ¶ 13).

Petitioner is being detained at the Adelanto ICE Processing Center in Adelanto, California. (Petition at ¶¶ 22, 25; Hellerstein Decl. at ¶ 14; https://locator.ice.gov/odls/#/results).

/ / /

5

## III.

## LEGAL AUTHORITY

A writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A noncitizen in the custody of immigration authorities may bring a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on the grounds of their detention violates the Constitution or other federal laws. 28 U.S.C. § 2241(c)(3); Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001) (federal courts retain jurisdiction to consider habeas relief under Section 2241 for noncitizens subject to detention following an order of removal).

## IV.

## DISCUSSION

**A.    Petitioner's First Claim Warrants Habeas Relief.**

The first claim in the Petition alleges that Petitioner's detention violates his right to procedural due process under the Fifth Amendment. (Docket No. 1 at 15-16; see Docket No. 9 at 5-7).

1.    Procedural Due Process.

The Fifth Amendment provides that "[n]o person shall . . . be deprived of . . . liberty . . . without due process of law." U.S. Const. amend. V. All persons in the

6

United States, "including aliens, whether their presence here is lawful, unlawful, temporary, or permanent," are entitled to protection under this provision of the Constitution. Zadvydas, 533 U.S. at 693. "Freedom from imprisonment— from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." Id. at 690; see also United States v. Salerno, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (collecting cases).

Generally, the Due Process Clause "requires some kind of a hearing *before* the State deprives a person of liberty or property." Zinermon v. Burch, 494 U.S. 113, 127 (1990) (emphasis in original). In Mathews v. Eldride, 424 U.S. 319 (1976), the Supreme Court established three factors for a court to consider for purposes of determining what process is constitutionally sufficient to protect a liberty interest: The private interest that will be affected by the official action; the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. Id. at 335; see Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (applying Mathews to due process challenge to immigration detention, and noting that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context"); López v. Wofford, Case No. 1:25-cv-01226-KES-SKO (HC), 2025 WL 2959319, at *6 (E.D.

Cal. Oct. 17, 2025) (collecting cases extending Mathews "to the context of immigration detention").

Thus, the Court considers the Mathews factors as applied to Petitioner's claim.

a.    Private Interest

Petitioner has resided in the United States for over 22 years. During that time, he has lived at a stable address with family. He was arrested for a DUI in December 2017 and was convicted in January 2019. He has not suffered any other criminal arrests or convictions. He applied for asylum on July 25, 2014, which was referred to an Immigration Judge.

Accordingly, Petitioner's liberty interest in remaining out of custody is protected under the Due Process Clause. See e.g., Cruz v. Lyons, Case No. 5:25-cv-02879-MCS-MBK, 2025 WL 4051129, at *3 (C.D. Cal, Nov. 6, 2025) (finding the petitioner had a protectable liberty interest in remaining on supervised immigration release); C.A.R.V. v. Wofford, Case No. 1:25-CV-01395 JLT SKO, 2025 WL 3059549, at *10 (E.D. Cal. Nov. 1, 2025) (finding the petitioner had a constitutionally protected liberty interest in remaining out of ICE custody based on the "approximately four years on parole" preceding his re-detention).

Pursuant to the holding in Mathews, Petitioner should have been afforded a hearing prior to being detained. Petitioner has a substantial private interest in remaining free from detention, living in his home, engaging in lawful employment and generally participating in the community, all while out of custody. See C.A.R.V., 2025 WL 3059549, at *10 ("As to private interest, during his approximately four years on parole, C.A.R.V. obtained permission to work, pursued gainful employment, and built a relationship with his fiancé and many others in his community. . . . Petitioner has a substantial private interest in being

8

out of custody and his detention denies him that liberty interest."); <u>Pinchi</u>, 792 F. Supp. 3d at 1034-35 ("Ms. Garro Pinchi justifiably relied on the government's implied promise in obtaining employment, taking on financial responsibility for her family members, and developing community relationships. The more than two years that she has spent out of custody since ICE initially released her have only heightened her liberty interest in remaining out of detention."); <u>Manzanarez v. Bondi</u>, Case No. 1:25-cv-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding that petitioner had a private interest in remaining free from detention where "he was released on his own recognizance for over two years and complied with his [order of release on recognizance] conditions during that time"); <u>López</u>, 2025 WL 2959319, at *6 ("Petitioner had been out of custody for nearly four years, and during that time, began a life in the United States, living with her partner and complying with the terms of her release. Her detention denies her that freedom.").

b.    <u>Risk of Erroneous Deprivation</u>

The absence of a pre-detention hearing under these circumstances presents an unacceptable risk that the government would erroneously deprive Petitioner of his liberty interest. Civil immigration detention is permissible only to prevent flight or reduce the risk of danger to the community. <u>Zadvydas</u>, 533 U.S. at 690-91. The risk of a wrongful deprivation is particularly high here given the evidence that Petitioner's removal proceedings were administratively closed. Respondent has adduced no evidence – or even argued – that Petitioner poses a risk of flight or a danger to the community. The government clearly did not believe Petitioner to be a risk of flight or a danger to the community when they administratively closed his removal proceedings; otherwise, the government would not have done so. <u>Cf.</u> <i>e.g.,</i> <u>Sequen v. Albarran</u>, Case No. 25-cv-06487-PCP, 2025 WL 2935630,

9

at *11 (N.D. Cal. Oct. 15, 2025); <u>Singh v. Andrews</u>, Case No. 1:25-cv-00801-KES-SKO (HC), 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025).  As noted, it has already been determined that Petitioner does not pose a flight risk or danger to his community when his removal proceedings were administratively closed.  There is no evidence indicating that this decision was erroneous or should otherwise be reassessed.

### c.    Government Interest

As for the third <u>Mathews</u> factor, "as many other courts have recognized, there is no meaningful countervailing Government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing." <u>Cruz</u>, 2025 WL 4051129, at *4 (collecting cases).  Here, the government has made no argument as to why Petitioner should be detained.  Moreover, Petitioner's removal proceedings were administratively closed.  "[T]he Government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lessor bond or alternative conditions." <u>Hernandez v. Sessions</u>, 872 F.3d 976, 994 (9th Cir. 2017).  Moreover, "any fiscal or administrative burden on the additional procedural safeguard of a hearing before neutral adjudicator imposes on the Government is at most minimal'[.]" <u>Sun v. Santa Cruz</u>, Case No. 5:25-cv-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (citation omitted).  There are no facts in the instant record which would support a finding that the government's decision to administratively close Petitioner's removal proceedings was made in error.

Therefore, the Court finds that there is a great risk that the lack of a pre-detention process – a hearing to determine whether Petitioner, in fact, presents a risk of flight or danger to the community – has resulted in his unnecessary detention. <u>See</u>

10

Mourey v. Bowen, Case No. 5:25-cv-03262-WLH (DTB), 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026).

Respondents have offered no reason – much less any compelling reason – as to why the government should be able to detain Petitioner, who has developed a significant liberty interest during his 22 years in the United States and likely poses no danger to his community or risk of flight, without first providing him with notice and opportunity for a hearing before a neutral adjudicator.

Accordingly, the Court finds that the government's detention of Petitioner on August 7, 2025, without adequate pre-detention process, when his removal proceedings had been administratively closed, violated his right to procedural due process under the Fifth Amendment.

**B.    Petitioner's Third Claim Warrants Habeas Relief.**

The third claim in the Petition alleges that Respondents arrested Petitioner without a warrant and without demonstrating that they had probable cause to believe he posed a risk of escape, in violation of 8 U.S.C. § 1226(a). (Docket No. 1 at 17-18; see Docket No. 9 at 6-7).

Ordinarily, immigration officials must first obtain an administrative warrant before effectuating the civil arrest of a noncitizen. See Arizona v. U.S., 567 U.S. 387, 408 (2012) ("If no federal warrant has been issued, those officers have more limited authority.") Id. Pursuant to 8 U.S.C. § 1226(a), the arrest of a noncitizen must be made "[o]n a warrant issued by the Attorney General." Id. "Under the [Immigration and Nationality Act], an officer may conduct a warrantless immigration arrest only if the officer "'has reason to believe that [1] the alien so arrested is in the United States in violation of any . . . law or regulation and [2] is

likely to escape before a warrant can be obtained for his arrest.'" Escobar Molina v. U.S. Dep't of Homeland Sec., 811 F. Supp. 3d 1, 30 (D.D.C. 2025) (quoting 8 U.S.C. § 1357(a)(2)).  Pursuant to 8 C.F.R. § 287.8(c)(2)(i)-(ii), "an arrest shall be made only when the designated immigration officer has reason to believe that the person to be arrested has committed an offense against the United States or is an alien illegally in the United States," and "that the person is likely to escape before a warrant can be obtained."  Although 8 U.S.C. § 1357(a)(2) uses the phrase "reason to believe," this has be construed to be "the equivalent of probable cause", since "aliens in this country are sheltered by the Fourth Amendment in common with citizens[.]" Au Yi Lau v. U.S. Immigr. & Naturalization Serv., 445 F.2d 217, 222-23 (D.C. Cir. 1971); see also Tejeda-Mata v. Immigr. & Naturalization Serv., 626 F.2d 721, 725 (9th Cir. 1980) ("The phrase 'has reason to believe' [in § 1357] has been equated with the constitutional requirement of probable cause."). "Put simply, immigration enforcement officers may conduct a warrantless civil immigration arrest only if they have probable cause to believe that a person is both in the United States unlawfully *and* an escape risk." Escobar Molina, 811 F. Supp. 3d. at 30.

Here, Respondents failed to respond to Petitioner's allegations that he was arrested without a warrant and with no facts supporting his warrantless arrest, *i.e.*, that, at the time of his arrest, Respondents had probable cause to believe that he posed a risk of escape.  In fact, as Plaintiff notes (see Docket No. 9 at 6), Respondents failed to respond entirely to Petitioner's argument regarding his allegedly unlawful arrest.  Thus, the Court construes Respondents' failure to address Petitioner's claim as their consent to the validity of the facts and arguments in support thereof pursuant to Central District of California Local Civil Rule 7-12.

Petitioner alleges that he was arrested without a warrant and without any probable cause to believe that he posed a risk of escape, since he was arrested while

attending a regularly-scheduled appointment with Respondents, pursuant to a ruse. (Petition at ¶¶ 6, 15-16). He further alleges that he has resided in the same location for approximately 12 years, and has worked for the same company for approximately 22 years. (Id. at ¶ 9). Given these facts, the Court finds no basis for finding there was probable cause that Petitioner posed a risk of escape, because he could be readily found at his long-standing place of residence or employment. See Escobar Molina, 811 F. Supp. 3d at 31 ("Courts have also made the self-evidence findings that the likelihood of escape is lower when the individual has resided in the country for a lengthy period of time and has strong community ties."); United States v. Pacheco-Alvarez, 227 F. Supp. 3d 863, 890 (S.D. Ohio 2016) (finding no flight risk where the defendant had a stable job, lived with his fiancé, and helped her pay the rent on their home, and helped her raise her two kids); United States v. Bautista-Ramos, Case No. 18-CR-4066-LTS, 2018 WL 5726236, at *7 (N.D. Iowa Oct. 15, 2018) (finding no flight risk where ICE encountered the defendant at his place of employment, "a place he routinely visited," and information about the defendant, including long-term residence, employment, and United States citizen wife and daughters, supported his having strong ties to the community).

Thus, the Court finds that Respondents violated 8 U.S.C. § 1226(a), as well as Petitioner's right to procedural due process under the Fifth Amendment, when they arrested Petitioner without a valid administrative warrant and without probable cause to believe that he posed a risk of escape.

Given the violation of Petitioner's due process rights, the Court further concludes that "Petitioner's release is necessary to return him to the status quo." Nazarian v. Noem, Case No. 5:25-cv-KK-DSR, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210

(9th Cir. 2000) (internal quotation marks omitted). The last uncontested status here is Petitioner's release on his prior conditions of release. See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention."). "Accordingly, Petitioner's release from custody is the appropriate remedy." Id.; see Esmail v. Noem, Case No. 2:25-cv-8325-WLH-RAO, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview *ex post facto*, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

For the reasons set forth above, the Petition is GRANTED, and a writ shall issue ordering Petitioner's immediate release from custody.[2]

## V.

## CONCLUSION

IT THEREFORE IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Respondents to immediately release Petitioner Everardo Urias (A 206-665-337), from custody, subject to the same conditions (if any) that Petitioner was subject to at the time he was arrested and detained, and return all property confiscated from him during his arrest and processing into detention; (3) enjoining Respondents and their officers, agents, employees, attorneys and persons acting on their behalf in concert or in participation with them, from re-detaining Petitioner without notice and a pre-detention hearing before a neutral arbiter at which the government bears the burden of proving that

---

[2] The Court's determination that Petitioner is entitled to habeas relief on the first and third claim alleged in the Petition renders it unnecessary for the Court to address the second claim alleged in the Petition.

14

Petitioner is a flight risk or danger to the community; and (4) Respondents shall file a status report within two (2) business days to confirm that Petitioner has been released from custody pursuant to this Order.

DATED: June 10, 2026

_____
DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE